Samsung Electronics Co., Ltd. Mr. Kaufman, please proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. We have two issues here this morning. Number one is the issue related to EDO and Claim 22 and whether the Board properly construed the term the detector circuit allowing the bias voltage V1 to get arbitrarily close to the ground. The other question deals with the remainder of the challenge claims and that is whether the combination of PARC and Baker renders the claims obvious. We would submit that it does not because the Board did nothing more than effectively exercise common sense when there is no teaching in either PARC or Baker of an inverter. Let me ask you a couple of housekeeping questions to clean things up. One is on page 17 of the Blueberry, the beginning of the last paragraph, it says Holmes interpretation of the plain meaning should be adopted. Yes.  That is a typo, Your Honor. Holmes is an unrelated party that we also represent and that should be promos and not Holmes. Okay. It confused the heck out of me, I must tell you. Second, on page 43 of the Red Brief, Samson says that the quote on page 17 of the Blue Brief that before the Board you argued that the plain meaning of the disputed phrase was a circuit that allows the designated target value of VBB to be closer to 0V, in any case closer to 0V than the one threshold below, is taken out of context. And the quote, the statement below, did not report to define the plain meaning of the claim term. Instead it was, this is their language, instead it was promos' gloss on the rationale underlying the allowance of the claims. And they cite to JA 1074 and 75 and it looks like they're right. And with respect, Your Honor, I would disagree with their characterization of it. Okay. Tell me why. So if we look at page 1074 and 1075, which is our brief before the Board, we start out by identifying the limitation, which is the limitation that requires a detector circuit allowing the bias voltage to get arbitrarily close to the ground voltage. And then we discuss the specification and file history about what that means And we talk about the specification and figure 3A and the improvements over figure 3A. And we talk about claim 22 being allowed based on the argument over Sukimoto and that the result that this requires a circuit that allows the designed target value of VBB to be close to 0V, in any case closer to 0V than one threshold below. And that's what we're arguing the plain meaning is here, Your Honor, in this appeal. And so I don't see any inconsistency there. That's what we said. We said what the limitation was. We pointed to pieces of the spec and the file history as to providing meaning to that. And then we said here's what it means. And then we went ahead on 1075 and 1076 and applied that to prior art that was cited by Samsung. And so I would respectfully disagree with Samsung that this was not a claim construction or not an articulation of the plain meaning, but was, in fact, an explanation of the plain meaning. How can you, just generally, for plain meaning, do you think when someone says this term should be given its ordinary and plain meaning, that would entail a Phillips analysis of looking to the specification in the prosecution history? I mean, I always thought the plain meaning would be we're going to let, for example, in a district court case, we're going to let the jury decide what this word means. These words don't require any interpretation. Everybody knows what it means. And so is it consistent to say I want to have a plain meaning interpretation and at the same time look at intrinsic evidence and apply the Phillips standard? I think it is, Your Honor, and I think perhaps the O2 case that we cited in the brief provides some guidance on this point where the parties in that case agreed to a plain meaning. They both said plain meaning, and then when it went to the jury in an infringement context, they were arguing over what the plain meaning was, and this court required construction to resolve that dispute. So in the district court in that case, it was said, look, at this point, you should have seen that plain meaning was not resolved in the dispute, so you should have construed the term. How was this brought to the board's attention that plain meaning wasn't going to be adequate here? You think that it was brought to the board's attention, for example, at page 1074? Is there anything else that explicitly brings it to the board's attention that, hey, there needs to be a Phillips-type construction here because the plain meaning isn't doing it? 1074 and 1075 is the extent of the discussion of that particular point in the record, Your Honor. What about the word arbitrarily close? Does the specification define this term? The specification does not explicitly define the term. It distinguishes Figure 3A, which is the prior art, as not being arbitrarily close, and that was also the distinction that was made during the prosecution history where the Sukimoto art had a similar structure and the distinction between the application claim, I believe it was 34, which matured into claim 22, explained that something that was set to one threshold from ground was not arbitrarily close and you needed a certain design that would get you closer than one threshold to ground to be arbitrarily close. What about the language arbitrarily close gives you that meaning? I mean, the claim itself is functional, this language. It's very functional and it talks about not setting the threshold voltage, right? It talks about setting something else to not be arbitrarily close to ground. The circuit that allowed the design voltage, I'm sorry. Yes, it talks about setting V1 to be arbitrarily close to ground but not to ground. But how, you know, so you see my concern is that, of course, the patent specification talks about a lot of different possible circuits, but it's not claimed that way. Instead, it's claimed with functional language and you're reading in something for, you're saying, you're reading in, I guess, something other than VBB for what needs to be arbitrarily close. I think we are interpreting it primarily in light of the file history, which says that it distinguishes arbitrarily close from something that's one threshold voltage below. And that distinction was accepted by the examiner and led to the allowance of the claims. And so that's what we're relying on for our definition of arbitrarily close. It's something, it is functional, but the function is set by the specific arrangement of the circuit. In light of the time here, unless there are any further questions about the Ito issue, I'm going to transition to Baker and Park. And the fundamental problem with the combination of Baker and Park is that nowhere in Baker or Park is there any teaching or suggestion to use an inverter with a substantially, that has a trip point that is substantially insensitive to the voltage change. Park doesn't say anything. Nobody argues to the contrary. Well, expert testimony said that equation 11.4 in Baker disclosed or suggested the claim of an inverter. But all that equation 11.4 discloses or suggests is that you can calculate the trip point, or the switching point as Baker refers to it, of a particular inverter when you feed the appropriate variables into that equation. It doesn't teach you to select the variables that would lead you to an inverter that is insensitive to voltage variations. And that may be a subtle difference, Your Honor, but that's the important difference. There's no suggestion to do the math in the way that their expert suggests. What about Park's reference to wanting having the overall detector circuit be impervious to changes in the power supply? Would that be enough to cause a poser to say, oh, one way to do that would be with the inverter? So Park just says it's good to not have the signal vary as much. But Park says nothing about using the inverter to do that. Park presents an improved circuit design and nowhere mentions the inverter. The prior art had inverters, so there's nothing in Park to draw that inference from. Park says we'd like to make it better, and here is our specific solution. When you say Park says we'd like to make it better, I thought Park said we want to make it so the detector is impervious to changes in the voltage supply. Do you agree with that? I agree with that. Okay, so it's not just better. It's more specific than that. Yes, it's better in that context so that the signal OSCEN does not vary as much. And your view is that that general reference doesn't give you enough to know that it's the inverter that you should muck with to accomplish that goal? Particularly when they have put in other circuit elements to accomplish that goal. Yes, Your Honor. And finally, just briefly, there's the issue of the homework problem that the board also relied on from Baker. And it's concluding that Baker would teach a person of skill in the art, and we contend that the homework problem should not have been considered because it was not discussed in the petition. Was it discussed in an expert report that was cited to in the petition? It was discussed in an expert report that was cited to in the petition, yes. And the specific page on which it was mentioned was cited, right? Yes, but there's no mention of the homework problem itself in the petition, but they do cite the paragraph that he discussed as well. But we submit that that's not much different than having a piece of prior art with alternative theories, relying on one theory, and then switching theories and picking a separate theory from the prior art when you decide that your first theory is not going to get you there. And that's what this court in the Wasika case said was not appropriate in light of the strictures of Section 312. Do you think the homework problem was even necessary? No, it doesn't add anything to the homework problem. All the homework problem says is do the math to get this result. It doesn't say anything about the benefits of a switching point, a voltage-intensive switching point in the inverter. So no, we would say that even if included, it doesn't change the result. If there are no further questions, I'd like to reserve the balance of my time. We'll reserve your rebuttal time. Thank you, Your Honor. Mr. Modi, please proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The Board carefully considered the parties' arguments and evidence and credited, for example, Samsung's expert over PROMAS's expert, this court's reform. Let me start with the Claim 22 issue. There, the Board, based on the extensive evidence, found that ITO simply discloses the limitation of Claim 22, the detector circuit limitation. Now PROMAS argues that the Board should have interpreted that language to mean and include, for example, things like target voltage, threshold voltage, design target voltage. And we believe that's even not remotely a plain and ordinary meaning of this term, as Judge Stoll, your questioning demonstrated. The plain and ordinary meaning of the term is what it says. It's arbitrary close to zero, and it doesn't go above the, it doesn't become positive. Is it your view that once they say plain and ordinary meaning,  to interpret the claim? Your Honor, they certainly could have looked at it to see if the plain and ordinary meaning was consistent with the specification and prosecution history. But I think that's the issue we have here, is their arguments have been shifting. So if you look at, even if you say, we believe they did not raise a claim construction issue before the Board. We don't raise waiver lightly. This is one of those cases that they simply needed to do more before the Board. But even if you consider that one single paragraph that Mr. Kaufman pointed to on Appendix 1074 to 1075, as raising some type of claim construction issue, Promus' argument fails for a number of reasons. First, despite Promus saying in its gray brief at five that its construction is verbatim before this Court than what it was before the Board, that's simply not true. If you look at page 15 of the blue brief and compare that to the construction that was offered to the Board, it's different. So their arguments have been shifting. So if you look at blue brief 15, they said it's a circuit structure that has a target voltage that is between one threshold below ground and ground but never becomes positive. And that's right under the summary of the argument. You'll see that. When you compare that to blue brief 17, which is what they offered before the Board, they said a circuit that allows the design target value of VBB to be close to zero, in any case closer to zero, than one threshold below. So their arguments have been shifting, and it's simply not fair to Samsung or this Court or to the Board for them to keep on shifting their claim construction arguments. Second, the support that they pointed to, just so this is getting to the point you were asking me about, the prosecution history and the specification. Their support that they pointed to, the arguments have been shifting. So if you look at their blue brief, again if you look at blue brief 19, they said- So all of this just goes to waiver, right? Because the question of claim construction is a question of law. So whether their argument shifts or not is irrelevant because as a matter of law, I have to decide what the claim term means, correct? Yes, Your Honor. So if you want to keep spinning your wheels on shifting, that's fine. I'll tell you I don't think they waived it. I feel quite strongly about that. Maybe my colleagues disagree. So if you want to spend more time on the word shifting, it's at your peril. Sure, Your Honor. I can jump to the claim construction point and address why we believe it's the incorrect construction that they're offering. So again, starting at the plain language of the claim, you don't see the words design target value. You don't see the words target value in the claim. You don't see the term threshold voltage anywhere in Claim 22. So the plain language of the claim simply doesn't support them. Then you turn to the specification. Let's take a look at the specification. Nowhere does the specification use the word design target value. It's nowhere to be found. And certainly it does not require the construction that's advocated by PROMAS that it says is the plain and ordinary meaning of the term. If you look at the passages that PROMAS cites to the specification, again, none of those passages get to the claim construction that they want this court to adopt. Are you looking at, like, column 3, around lines 14, 15, where it says a circuit that allows VBB to get arbitrarily close to zero volts but does not allow VBB to become positive? Is that the language you want to use for that? That's right, Your Honor. That's exactly right. I see your point there. What about the prosecution history? I'll get to the prosecution. Let's go there right now. Let's take a look at the prosecution history. So if you go to Appendix 451. So it's pages 450 to 451 of the prosecution history is what they point to. And on the prosecution history, their position is that the prosecution history provides a clear and unambiguous meaning for this claim term. Again, that's not what we call a plain and ordinary meaning. So if you look at the prosecution history, nowhere in these pages will you find the definition that they're asking this court to adopt for this term. To the contrary, if you go to page 451, and I want to highlight footnote 1, they actually said claim 34, which is now claim 22, is not limited to the embodiments described in applicant specification or drawings. And I think that's fatal to their argument with respect to the prosecution history because they're asking this court to basically import limitations into the claim that are simply not present. In fact, there are other claims, Judge Stoll and Your Honors, that actually they knew how to claim the structure. So, for example, if you look at claim 24, which depends from claim 22, and that's an appendix. Well, how should we interpret this language that says 450 to 451? They're responding to an indefiniteness argument, is that right? Am I remembering the rejection correctly? No, Your Honor, it was a prior art rejection. Oh, prior art, okay. All right, well, that's why I asked. So they're responding to a prior art rejection, and they're saying in the prior art figure 3A, the transistor prevents BBB from becoming… I believe there's a typo there, it should say positive. Okay, all right. So, thank you for helping me. So how would you have me interpret this distinction from figure 3A in the prior art? And did it overcome the rejection? Certainly, Your Honor. So what the file history tells us, these arguments, after they made these arguments, the examiner did allow the claim. So whatever it is they said in this sentence caused the examiner to allow the claim. How does this sentence not support the construction they're arguing for as opposed to the one that you're arguing for? Sure, Your Honor, so let me explain. So, again, if you look at these couple of paragraphs, nowhere do they actually say that the claim term arbitrarily close to zero requires a design target value. We don't see those terms here. No, just to make sure I'm looking at the right place, we're looking at page 451, the first two full paragraphs. Yes, Your Honor, and I think Judge Moore was looking at the page prior to that. So it starts at 450, where it says, Claim 34 is supported by applicant specification. So that's, I believe, what Judge Moore was referring to. I think our point is fairly simple here, that if you look at the prosecution history, nowhere in the prosecution history do you see the kind of words that they now want this court to import into the claim. Is there anything on this page that talks about the desire for it to be no more than one threshold lower than zero? I might not have the language right, but I don't see that language here as well. Right, so I think the closest that they get, Your Honor, is at the top of page 13. It says, but transistor M30 also prevents VBB from becoming closer to zero than the threshold voltage. Got it. But, again, our point is they're talking about the structure of their circuits, and then in the footnote, they say we're not limiting our claims to that structure. And if you look at Claim 24, Claim 24 claims that structure. So they certainly knew how to claim the structure that they want this court to now essentially read into Claim 22. So which is why, and again, this is a high bar that they have. They want, this is not the plain and ordinary meaning of this term. They're asking this court to define this term in light of the prosecution history, which is anything but it doesn't get them to where they want to be with respect to this claim. So if you look at the totality of the evidence, it simply does not get them to their claim construction. But in light of your construction, which is quite a bit broader, how would they have gotten around Figure 3A in the prior art, which is almost exactly like ETO, right? So, Your Honor, I'm glad you asked that, because we do think there's a distinction between ETO and Figure 3A, which the board found. The board made a factual finding on that. Okay, well, before you get to that, though, answer my predicate question, which is the one about under your construction, how could they have successfully avoided Figure 3A? I don't see how the examiner could have allowed the claims in light of Figure 3A if he had your claim construction in mind. So let me explain why. I understand this is a very implicit, tenuous argument. So maybe it's not clear and unmistakable disclaimer, or maybe it isn't plain to me. I don't know, but I'm just struggling with the technology. I don't know how the examiner allows this claim in light of Figure 3A if your construction is the one he has in mind. Let me try to help you, Your Honor. So the reference that the examiner was looking at was the Tsukigawa reference. And it's interesting. We actually don't have that reference in the record here. Right? If this was such a big deal, they should have briefed this before the court and before the board and put that reference in the file history and before the record. But if you actually look at the Tsukigawa reference, I did actually go look at it, it actually is three threshold below. So it's not one threshold below. It's three threshold below. And that's what they were trying to distinguish here. And you can actually see that. So if you go to appendix page 451, and it's right in the middle. It's the paragraph that says, in Tsukigawa. There, right in the middle, it says, because of transistors 106 and 108, the current through transistors 104, 106, and 108 to VBB will turn off if VBB gets closer to ground. And ground, then, the sum of the threshold voltages. So it's the sum of those three threshold voltages. So Tsukigawa was actually operating. So if you had Judge Moore Figure 3A. So let's say this is ground. Figure 3A was here. Tsukigawa was here. And so that's how they, again, the prosecution history is far from clear. It doesn't rise to the level of a clear and unmistakable disclaimer or a clear and ambiguous definition. But that's certainly one explanation for what the examiner may have thought and what was happening. And we believe that's what was happening. And then you go to Ito. Again, there's a factual finding made by the board. And the board is not entitled to deference on that. I think we should look at that. And that's on appendix 18 in the board's final decision. There, the board found that, in other words, in the acknowledged prior art, the dynamic range of VBB was limited to minus VTN at the top end, whereas the demonstrative functioning of the detector in Ito has no such apparent limit. And we think, again, that's fatal to their argument, even if you were to give any weight to their prosecution history arguments. Ito is simply different. And the board made a factual finding on that point. So unless your honors have any other questions on this issue, I'd like to move on to the trip point issue. So with respect to the trip point issue, again, there the board evaluated the evidence and the arguments. They credited Dr. Baker's testimony over Mr. Brumbutt's testimony and found that the claims were invalid. I think Judge Stoll, you raised an interesting issue, which is PARC actually is the reason we have the motivation. And then we actually had other reasons for the motivation. The Lovett reference is another one we showed that provides the motivation to make the trip point insensitive to the voltage variations. So there is no hindsight analysis there. I do agree, though, that there's nothing in Baker or any other prior reference that talks about making the trip point for the inverter insensitive to fluctuations in the power supply voltage. The PARC talks about making the detector itself insensitive to fluctuations in the power supply voltage. But it doesn't say, hey, look to the inverter to do this. So we actually have evidence, Your Honor, on the record on that. And that's the Lovett reference. And Dr. Baker cited to it. It's at 845. And it's lines 120 to 22. Isn't it 45? Appendix 845. 845, thank you. And again, Dr. Baker talks about this in his declaration at paragraph 111 and that's cited too in the petition. You'll see if you look at column 1, lines 20 to 22, Lovett tells us that the trip point of an ideal input buffer, which is what we have in PARC, would be utterly stable and would be insensitive to variations in the supply voltage VCC. So there was motivation to get to this limitation. And then Baker tells us how you manipulate the trip point. So, Your Honor, it's appendix 274, paragraph 111. So there is plenty of evidence in the record. So when you have that motivation, and Baker simply tells you how you manipulate the equation to get to the trip point, right? How do you make it insensitive? And we have testimony from their own expert on this issue. And I want to point the court to that. And that's at appendix 1322 to 1323. Their own expert said one of skill would know how to manipulate this equation. Hang on a second. So I just got to 1322. What line should I look at? Sure, Your Honor. It's line 55. Okay. Or page 55, sorry, line 22. Got it. And it goes on to 56, line 9. And you'll see there their expert agreed that one of skill had the requisite skills to manipulate. And he said God help them if they don't know that. So there is plenty of evidence in the record that supports the board's obviousness finding on this trip point limitation. And the board properly looked at the homework problem. It was plainly cited to... Do you think that you need the homework problem? No, we don't, Your Honor. Unless the court has any other questions, we request the court affirm. Okay, thank you, Mr. Modi. Mr. Kaufman, you have some rebuttal time. Thank you, Your Honor. Thank you. May it please the court. I'm going to go in reverse order and talk just briefly, respond just briefly to the Lovett point that was made by Mr. Modi. I'd note that the board did not rely on Lovett or even mention Lovett in the final writ decision. I'd also note that Samsung, in its brief to this court, mentioned Lovett a grand total of once. It's footnote four on page 24. There's no explanation of any way that Lovett supports the board's decision. They simply referenced it in passing as a footnote. I think I read about it. Please tell me if I'm wrong, but I thought I read about it in Mr. Baker's declaration. There is some discussion of Lovett, not as a reference, but just as sort of background for a person of skill in the art in Dr. Baker's declaration. I thought it also was discussed during the discussion of the motivation to combine. That's the part of his discussion, that references Lovett, but it was not relied upon. There were no factual findings about it by the board. The board did not cite it or discuss it in the final written decision. The sum total of their discussion of it in their brief to this court is footnote four, which is a sentence saying that Lovett was there. Your point is that to the extent Lovett's relied on to teach a claim element, there is no reliance by the board on that. Correct. It wasn't even relied on by Samsung to teach a claimed element, Your Honor. It was simply provided as sort of evidence of the state of the art and the skill in the art, but not to teach anything specific in the claims. It's not Park plus Baker plus Lovett. It's just Park plus Baker. Turning, Your Honors, to the claim construction point, to the extent that there's any confusion as to what we're saying the construction is, it is what we say on page 1075. That's what we're relying on. We think that the prosecution history does, in fact, support that particular construction. Mr. Modi made reference to the footnote in the prosecution history that says we're not limiting it to a specific structure. Certainly, we're not limiting it to the structure shown in figure five. They weren't saying that the claim was limited to the structure shown in figure five, but they still were distinguishing structures that do what we do from structures that don't, which is the prior art figure 3A and which is the prior art figure 2, Tsukikawa. We would submit that the prosecution history does provide a basis for the construction, unless there are any further questions. Thank you, and we are reversing. We thank both counsel. The case is taken under submission. Thank you.